The next case today, number 231657, Northwestern Selecta, Inc. v. Ramon Gonzalez-Beiro, et  Counsel for Appellants, please introduce yourself on the record to begin. May it please the Court, my name is Edward Hill and I represent the appellant. I won't reserve, Your Honor. My opening syllogism is Congress preempted. How many minutes do you want to save for rebuttal? I do not. Okay. We've got a redundancy here today. Okay. Okay. Okay. Go ahead. Thank you, Your Honor. Congress preempted states and territories from imposing requirements that are in addition to or different than those established by the Poultry Product Inspection Act upon premises, facilities, and operations of an official establishment. Congress's enactment of a provision defining the preemptive reach of a statute implies that matters that are beyond the reach are not preempted. That's what the Supreme Court said in Cipollone. That's what the case is presented by the appellant here. Puerto Rico regulations require an inspector to be present when an intermodal freight container is first opened upon arrival on the island and prior to the cargo being unloaded at the importer's facilities. This is well beyond the preemptive reach of the PPIA. The district court, however, permanently enjoined the Department of Agriculture of Puerto Rico from imposing its regulations upon Northwestern Selecta because it was, quote, a requirement in addition to or different than the requirements of the PPIA. Such is an expansive interpretation of the PPIA and its preemption statute and is contrary to the narrow interpretation that should be given to the PPIA's preemption statute. Narrowly interpreted, the preemption statute here is designed to prevent states and territories from, quote, in the words of the Supreme Court, reaching into federally regulated facilities. Puerto Rico's regulations... Counsel, if I may, I think, obviously speaking only for myself, I think there's an unusually serious waiver issue in this case in the sense that you're making arguments that really were not made below, and I refer to how you defined operations relating only to slaughtering and processing, how you treat the containers, the shipping containers in relation to an official establishment. And I say that in part because when you look at the district court's opinion, there's no... The district court opinion is thoughtful, thorough, there's no recognition of those arguments. The district court doesn't address any such arguments, which suggests to me that they were not made. I know there's a lot at stake here and deciding it on the basis of waiver might seem unduly technical, but that seems to be a serious issue here. So I would appreciate it if you would explain to us why you have not waived the arguments that you're making. Absolutely, Your Honor. Our contention below, and this is a result of the analysis of the district court, the district court held that the intermodal freight container, this big metal box which transports cargo from Jacksonville to Puerto Rico, was part and parcel of the premises of the Northwestern Selective. We argued that, obviously below, we argued that there was no preemption because the cargo container is not part and parcel. But when the court did rule that the container is part and parcel, we had to interpret and we brought into our briefs here to the court a proper understanding of what should be considered premises, facilities, and operation. And we analyzed that using the canons of interpretation that really mirror your case, Judge Lopez, in the Medicare case where you said, we need to look at what the statute says, and we need to look at what the intent of Congress was, and we need to look at the pari passu or compare the regulations. And when we did that, all we did, I believe that we preserved the issue below, but all we really did was expand on our research to demonstrate that what Congress really intended was to regulate the goings on within the facility, the premises, the facility, and the operation, and to distinguish it from the cargo or the delivery vehicle that brings in the regulated material, right? And so, to answer the question, I don't believe that we waived anything in our briefs. We merely expanded our interpretation and our research. We looked at the regulations. Counsel, if I may, you started, answered Judge Lopez by saying you think that the district court ruled that the shipping container is part of the premises, but I didn't read the district court's decision that way, so I just want to take you back a bit to where you started. I think what the district court did was look at the plain languages of the statute and said that, you know, I'm just looking at the relevant language, that requirements within the scope of this chapter with respect to premises, facilities, and operations, and then he looked at operations, and he continued down to look at the language, and he said that there isn't concurrent jurisdiction here because concurrent jurisdiction would only apply to things that are happening outside of such an establishment, so it's not that he said that the container is a premises. He was just saying that the unloading is being done in the establishment and not outside of the establishment, and therefore, concurrent jurisdiction doesn't apply, so I'm just wondering if you can respond to that because it seems to me that the stipulated facts are what they are, and it's very clear that the unloading is being done inside the establishment. It's being done on the, let's call it, on the four corners of the property, but see, Your Honor, in order to reach the conclusion that it affects the quote-unquote operation, when we looked at what operation really means, operation is the goings-on of the facility, and we asked the court to look at two particular cases that highlight this, our position. One of the cases is the Supreme Court's case in National Meat, and that's the California case where California said you can't kill non-ambulatory swine, and that went to the Supreme Court, and said that this is preempted because you're adding or you're making something different, your regulation is different from, and it's you're affecting the operation, and the operation is what's going on on the inside, whereas our case... If I may, I am familiar with that case, and I read your brief very carefully, but I think the issue is, you know, Harris is, of course, relevant, or National Meat is relevant, but we need to look at the language of this statute and the district court's decision, and, you know, again, it's not clear why this isn't operations, it's they're unloading products that they're about to sell, that's part of the operations of their business in that facility, the establishment, and then on top, I think what the other side has said is there is a regulation that's different, or there's an absence, there is no regulation in the federal, you know, set of regulations and statutes that requires for somebody to be present just when the unloading happens, so when that requirement is then imposed, it is in addition to or different from what the federal regulations provide. But it all hinges on the word operation. Is the operation occurring, for instance, is it slaughtering, packing, canning, which obviously it isn't. It's the opening, the container arrived, open it, let me see how the product arrived, and that's not within... That's a more expansive reading of, quote-unquote, operation. And here, the operation, obviously, the operation of the court is for the court, you know, the regulation on the court would be the court sits, the court hears our argument, but the state can regulate how you park outside of the facility. Yeah, I understand that, but I think, again, if we're looking at the language of the statute, I wasn't quite sure why the operations would be limited in the way that you said, because if we just look at, again, what the district court wrote very thoughtfully here, that the general purpose of this, of PPIA and the district court quoted, is to provide for the inspection of poultry and poultry products and to regulate their processing and distribution. And you seem to just be focusing on processing and leaving out the distribution, and I'm just wondering if you can tell us, you know, why should we do that? Right, how did I get to that conclusion? I used Judge LePez's analysis, and I went into, for instance, looking at what the intent of Congress was, and I looked at the regulation, the PPIR, which says nothing with regard to what, with regard to these containers. Rather, that all the PPIR talks about, and similar regulations with, under similar statutes from the USDA, all refer to the goings-on within the slaughtering, the packing, the canning, the packaging, the labeling. Those are the things that Congress intended to regulate under the PPIA. And the PPIR seems to reflect that, because when you look at the PPIR, it tells you what utensils you can use, what is the rate of the slaughtering, what are the different types of conveyor belts that can be used, and so on and so forth. So it's really the going-on. And going back to the Supreme Court's case in Harris, the, these, this is a, obviously operation is what's happening on the inside, not what goes on on the outside. Obviously, we have to note that there is an official establishment that slaughtered, packaged, and processed the poultry, put it on a truck, but if you go to the Chicago case, the Chicago case said, in a similar worded preemption clause, said that, the Seventh Circuit said that, you know, the things that go on on the outside of the facilities are obviously not regulated. And the state can intervene in those, in those areas. And that was the Seventh Circuit in, it says that the association argues that the operations, quote, unquote, of regulated establishments extend beyond their premises to the cargo container. When we consider that word in the context of Section 408, we do not believe that Congress intended to give such an expansive meaning to the, to the word operations. And that's, that's our case here. Operations does not include what's going on. I'm asking you, when you tell us what operations is, are you telling us as a matter of law? Or is it something that's factual, because if it's factual, then there's no record below? I'm asking you on, as a matter of law, because, and the only reason I'm coming to you as a matter of law is because we have a stipulated record. And when you, when I follow the canons of interpretation, operation does not mean the box that has the meat. Well, what does the phrase from the FSIS regulations refers to processing for transportation? That's a phrase that I believe appears in the regulation dealing with inspection. What's going on at the, at the Northwestern facility?  So, when, when you look at, when you look at what the, what the official establishment is supposed to do, the official establishment is supposed to slaughter, package, can, or, and label the product. The distribution in the, the only thing that Northwestern Selecta does, it's not, it is not slaughtering, it is not packaging, it is not canning, it is not packing. It is receiving, it's an importer, it receives the, the already processed meat, slaughtered someplace else, packaged someplace else, labeled someplace else, put in a, in a, in a box, in a shipping container, placed on a ship, brought, brought in to Puerto Rico. So, processing refers to something that is done to the product, the, the, the poultry, is that? Inside of the facility. The processing is the butchering of the animal, the, the, you know, taking out the gizzard and preparing it for the, for packaging. And place, there's a definition of what packaging and the quote, unquote, shipping container is, and the shipping container is the, the plastic bag or box where the meat is placed. I don't think you made that argument below, and I don't see anything in the district court's opinion that suggests that you did. Your Honor, again, we, we made the, the argument that preemption did not apply. We simply, at the courts, and this is what we believe is the error, the error is that it is an expanded interpretation of the preemption statute, and it falls well outside of what Congress ever intended. My time is up, Your Honor. Thank you, Counsel. Attorney for Appalee, please come up and introduce yourself on the record to begin. Good morning. May it please the Court? My name is Maria Bartoles. I'm on counsel for Appalee Northwestern Selecta. I agree that there is a serious issue here of waiver. Not only of waiver, but of trying to go against stipulations between the parties that were submitted to the district court. The argument on that the meaning of operations is limited to slaughtering and processing was never raised before the district court. The only argument was that the regulation simply did not affect the operations, but Let me ask you, had it been raised before the district court, you would have further asked for a factual record or factual findings? Of course. I mean, well, the thing is that it is incorrect as a matter of law, because when you look to the, through the regulations, the 9 CFR 318.6, there are like 500 issues that are and are not by any means limited to slaughtering and processing. Even the purpose of that, when you go to the law, just the policy of the Congress stated there, it's clear that it includes the processing, the slaughtering, and the sale and distribution, because we are part of that chain. It makes no sense if you just regulate this part of the chain, and then me that is selling the product to the consumer and to the retailers and to the wholesalers have no regulation at all. Then the purpose of the law is defeated, and that is very clear from the law, so. But wait a second, counsel. I mean, I think it seemed to me that below, the Department of Agriculture was making, it seemed to me a pretty legitimate sort of police power argument in the sense they point out that at the source, there's all this inspection that takes place so that there's care is taken that the product that is shipped is properly frozen and labeled and so forth. Then the product is put on a ship, comes to Puerto Rico, it's taken off. And at that point, there's no inspection that takes place. And they point out that in transport, things could happen. The freezing could not be proper. The product could arise in Puerto Rico and be contaminated in some way or unsafe. And so, to protect the population of Puerto Rico, they're providing an inspection that the federal authorities are not. Why isn't that a demonstration of their police power concern, which the preemption document is supposed to respect? Well, the thing is that they are regulations. The scope of the regulation covers what happens within an official establishment. I have duties under the law that if I, for any reason, inspect the Northwestern, inspect whatever was received in our facilities, and it doesn't comply with the marking of the inspection, the information that it has to contain, something, there's some safety or healthy issue of the merchandise as it was received, I am required to notify the federal agency about it. And we must keep in mind that what is being challenged here is not the ability of the Department of Agriculture of Puerto Rico to take samples of whatever is received in Northwestern to do things to make sure that the federal regulation is complied with. We're not questioning that. What we are questioning is that requirement. That's specific. It ends and begins with having a requirement that every time a container arrives to our facility, I can't do anything with it until someone from agricultural comes in. Does the record indicate that when the product arrives in Puerto Rico, there is no kind of, there are no federal inspectors in place that do the kind of inspection that the Puerto Rico Department of Agriculture was doing? That doesn't happen. When it comes to the port of San Juan, for the merchandise to arrive to Northwestern, there must be like a clearance from the federal authorities that are there at the port. And also the Department of Agriculture. The container is not open there. The container is open in our facility. But let's be clear that that merchandise was fully inspected and followed a very thorough procedure before in the main line, before coming here. If they want to check out and they want to verify the quality of what arrived, they can take samples. That's actually what they are doing. We also have to keep in mind something that is not mentioned by council. But this regulation is so important that it has only been implemented for a year. It was enacted in 2016. And it was not until 2021 that they started implementing and basically notifying violations to Northwest Intellecta. That was in 2021. And then after that, in 2022, a year, just a year after that, they issue an order saying that they have no enough inspectors to implement this regulation. Council, let me ask you because one thing I noticed in the briefs, but I just wasn't sure about the precise scope of what was being discussed. The briefs talk about that there are federal regulations that provide for inspection of products when they enter or leave an establishment. Is that correct? What are those regulations that you both discussed? Just what does it mean to enter or leave? For example, and obviously there are like the regulations are very extensive as to what happens after. And all the labeling, all the sanitary procedures that I need to comply with. And all the things that I need to notify. For example, just to give you an example, there is a notification requirement. But just focusing specifically when it enters and establishes. Section 459 that is imposed upon me. And that I believe that is contrary to what they are doing. Because if I can't open the container, I can't comply with my notification requirement here imposed by Section 459. It says any establishment subject to inspection under this chapter that believes or has reason to believe that an adulterated or misbranded poultry or poultry product received by or originating from the establishment. So it includes received by. Has entering to commerce shall promptly notify the secretary with regard to the type, amount, origin, and destination of the poultry or poultry product. So it imposes upon Northwestern Serecta an obligation to notify the federal agency as to anything that I see against the law when it arrives. If you are saying to me that I can't even open the container, if someone from the Department of Agriculture is not there, what you're basically saying to me, you can't comply. You have to delay compliance with federal law because I'm imposing this requirement. And if you go to the plain language, I mean, here I believe this is a really simple case of preemption. That is explicit, the language of the law. It is very broad because it says with respect to the operations and facilities within the scope of this regulation. If you read the scope of the regulations, and most importantly, the CFR, the ones that were promulgated by the FSIS. Also, excuse me, as I read what the district court said, it sounds to me like even if Puerto Rico wanted on an occasional basis to send somebody in to the establishment to do a sampling, that that would not be consistent with the concurrent jurisdiction provision. I differ. I think the sampling, and actually they're doing the sampling right now. They're doing the sampling and we're not objecting to it. If the purpose of the sampling is to make sure that I'm complying with a requirement within federal law, there's no problem. The problem is when you add a requirement that is additional or different to what is in federal law. That's what is preempted and is preempted within the scope of the regulation. And the scope of the regulation is expansive. There's absolutely no grounds for appellants to argue that this is limited to slaughtering and processing. That's simply, it just takes you to go to the CFR and look for the more than, I don't know, 500 I went through last night. Counsel, so just to make sure I understand, because your opposing counsel has said this particular facility or establishment, there is no slaughtering processing in the sense he was using it of actual poultry there. It's just receiving product and then shipping it back out. But what you're saying is a regulation like what you just read to us, 459, I think you said, that regulation already takes into account situations where product is coming into a facility like yours and imposes requirements upon you when it enters. And one of those requirements is not that an inspector be present. So is that correct? So you're saying the regulations were meant to apply to facilities like yours that have nothing to do with slaughtering or processing meat.  If you go to the congressional intent at the beginning of the law, it expressly mentions distribution and selling to the consumer. So yes, and when you go to the regulations, we have also sanitary obligations. We have labeling obligations. We have all sorts of regulations that affect our operations. And I honestly can't think about a regulation that has an effect, but that it has not an effect upon my operation when this regulation actually stops my operation. I don't know how can you possibly argue that this has no effect on Northwest Inspector operations. I can't deliver my product. I can't inspect the product. I can't comply with my clients, and I can't comply with the federal law because I cannot even raise my hand and call a federal agent and say, you know what? What I received yesterday has problems. The label marking the inspection in the mainland is incorrect. It's incomplete. I mean, that kind of thing is regulated there. So it's obviously preempted. And the effect on operations, it's, I mean, nobody can question it. What if the local Department of Agriculture had, let's say, a Northwest selected facility, one or two people who are there at 724 and do everything very quickly and say, go ahead, we checked it, that would be different or it's still the same result? It appears to me that one of the things you say that sometimes you have the trucks there waiting, and unless the agriculture folks show up there, under the local regulation, you can't do anything. Yeah, no, I can do it. But the question is whether if you have, in a perfect world where I have somebody from agriculture there, the result is the same, it's preempted. Because it remains to be a requirement. Even if it takes five minutes? Yeah, because it's a requirement that is not established by federal law. And it's preempted. And it is within the scope of the preemption clause. And it also affects my operations. So, yes. Yes. Please explain to me again what the Puerto Rico Department of Agriculture would be permitted to do consistent with the preemption clause in terms of inspecting product that is imported into Puerto Rico? What are they permitted to do under the existing preemption clause and the regulations? Would you please explain that again? Anything that does not imply an additional requirement or different requirement that the federal law establishes. They can do whatever they want to do, inspect whatever they want to inspect, to make sure that whatever is happening within Northwestern Selecta is complying with federal law. But they can't add requirements. Well, they could be there 724, but just ensuring federal law is complied with. And that you can't say anything. Again, what they're doing right now is they're taking samples of whatever we're receiving. That's what they're doing. And that you have no problem with. No. So, it's their reliance on 12B of their regulation to say that until we have an inspector present, and we're not sure when that inspector can be present, you can't do anything. You can't open. I can't do anything. You can't distribute that. And I get fines of hundreds of thousands of dollars. And that's what they're defending here. That's what the court said you can't do. And they're defending that broader version of their power. That they can do that and that they can fine me. Right. And let's point out that the fine is not because I violated any federal law. It's just because I opened the container. That's it. So, what's the purpose of that requirement? In theory, the agriculture personnel could be there and say, oh, when are you opening your container? When you open it, I want to check this and check that out to make sure it complies. That's not an issue. It's just simply you have to wait until we're there to open the container. And they are not there. They are not there. But they're coming and we don't know when they're coming. Actually, they issued an order saying it's random. We don't have enough people. Northwestern Selecta receives 50 containers per week. You know what that means to an operation? That 50 containers per week are stopped from being opened? Because maybe until next week, I don't have an inspector there. And that does not affect my operation. And I assume also, and again, this has nothing to do with this case, but we get, I forget what the statute is. I was a district judge. You get these TROs when, because if you don't get certain food out of containers, it rots immediately. Forget what the name is again. But that's something that can happen. If you don't move the food or put it inside your freezers or something's rotting, more market can rot. Packet trusts, that's the case. I don't know if that's the one. There's nothing to do here. Well, I can go now into the, obviously, the language includes the... Can I ask you, counsel, before you move on? Again, I'm just trying to understand how the language actually impacts an industry that I'm not an expert in. So when the statutory language in 46070 does talk about concurrent jurisdiction over articles that are outside of an official establishment, what does that mean in your view? What kinds of things is it referring to? Is it the delivery trucks that are on the road in the Seventh Circuit case? Or can you just give us a practical sense of what that is? I believe it's when it is out of my facility of the official establishment and that I have no control over the quality or the kind of thing. But in any event, the language of the exception says that it needs to be consistent. So it's consistent and that it needs to be outside of the establishment. And then again, that's a problem they have of waiver and trying to... Because all the orders say that the uploading and unloading occurs at the facility. So that's stipulated. There's no question about it. And the orders actually include that language. That the violation is because at the facilities, there was no inspector. So obviously, the exception as a district court rule, it does not apply. Also, as a factual matter, is it the case there is no federal inspection that takes place at your facility, Northwest facilities? Is that correct? When we receive the containers, no, there's no federal agent there. So that's precisely why this requirement is beyond additional and different from anything that is required by federal law. No. That doesn't mean that we are inspected by federal inspectors or that, again, that the Department of Agricultural can come in and make sure that the facilities, that the sanitary requirements are complied with, that's something different. But that your question that if there is an inspector, federal inspector saying, please do not open this container until I see it. No, there's no... And that's precisely why this is preempted. But doesn't that... Oh, well, never mind. Thank you. Any further questions? I know your time is up. Okay. Okay, thank you very much. Thank you, counsel. That concludes arguments on this case.